[999 NYS2d 540]

In the Matter of CHARLES A. ESPOSITO, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, January 28, 2015

APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Antonia Cipollone* of counsel), for petitioner.

*Charles A. Esposito*, Palm Coast, Florida, respondent pro se.

## OPINION OF THE COURT

Per Curiam.

The instant application is predicated upon two orders of the Supreme Court of Florida, filed on July 31, 2012 (97 So 3d 825 [2012]), and June 6, 2014 (145 So 3d 829 [2014]), which respectively publicly reprimanded the respondent, and subsequently suspended him from the practice of law in that state for a period of 30 days.

Order of the Supreme Court of Florida Filed July 31, 2012

The order of the Supreme Court of Florida that was filed on July 31, 2012 (97 So 3d 825 [2012]), was predicated upon a complaint, a stipulation for the entry of a consent judgment, a conditional plea of guilty for a consent judgment, and a report of a referee accepting a consent judgment, as follows:

### Count I (The Rusin Complaint)

In or about December 2007, Joseph R. Rusin hired the respondent to represent him in connection with legal matters arising from and postdating the dissolution of Rusin's marriage. At or about that time, contempt charges were pending against Rusin for failing, inter alia, to pay his former wife's attorney's fee. Rusin advised the respondent that he wanted representation on the pending contempt charges, a downward modification of his child support obligations, reinstatement of shared parental responsibility and/or a change of custody, and resolution of the fees that he owed. During the representation, Rusin raised additional issues that he expected the respondent to handle. The respondent failed to clearly delineate, in writing or otherwise, the precise issues he was willing to handle for Rusin, and failed to clearly and timely advise Rusin whether he was willing to handle the additional matters that Rusin later wanted addressed. The respondent agreed to accept a $5,000 retainer, which Rusin paid.

On May 8, 2008, Rusin sent an email message to the respondent, requesting that witness subpoenas be timely served for a hearing scheduled for May 30, 2008, and expressing concern about whether the subpoenas would be timely served. The re-

spondent did not timely advise Rusin that he needed to pay additional costs to cover the service of the witness subpoenas.

On May 14, 2008, the respondent served the attorney for Rusin's adversary with a motion for leave to withdraw as Rusin's counsel in the matter, in part due to Rusin's "failure to meet his financial and contractual obligations," and due to Rusin's filing of pro se documents in the matter.

By check dated May 20, 2008, Rusin paid the respondent the sum of $500. Rusin later explained that he thought the payment was for service of the witness subpoenas. The respondent contended that he understood that the payment was for additional attorney's fees incurred in the matter. Further, according to the respondent, he did not serve witness subpoenas because Rusin made no payment for the costs for that service.

On May 21, 2008, or nine days before the hearing scheduled for May 30, 2008, the respondent provided Rusin with a copy of the motion papers in connection with the motion for leave to withdraw as Rusin's counsel. On that same date, the respondent advised Rusin that Rusin needed to pay additional money toward the outstanding fee balance as soon as possible, or the respondent would proceed to have his motion for leave to withdraw as counsel heard on May 27, 2008. Rusin paid the respondent an additional $500 on or about May 27, 2008, and the respondent withdrew his pending motion.

On May 28, 2008, the respondent conveyed to Rusin, by email, an offer that Rusin settle all of the issues that were outstanding in the matrimonial dispute by paying his former wife the sum of $25,000. On that same day, Rusin advised the respondent that he did not have the ability to pay this amount.

The respondent had discussions with the former wife's attorney regarding settlement of the issues that were to be heard at the hearing scheduled for May 30, 2008. The respondent did not appear at the hearing on May 30, 2008. Rusin appeared at the hearing, expecting that the respondent would call witnesses who would testify on behalf of Rusin. Rusin advised the court, and the attorney for his former wife, that he was unaware that the respondent had accepted any settlement offer on his behalf. The court then allowed Rusin to telephonically confer with the respondent for approximately 30 minutes. After conferring with the respondent by telephone, Rusin advised the court that he was amenable to a settlement, pursuant to which he would pay his former wife the sum of $12,000 on or before August 1, 2008. According to Rusin, this offer was significantly better for Rusin

than the former wife's original demand of $25,000 to resolve the matter. The settlement resolved all outstanding issues between Rusin and his former wife, except the division of his pension. As of May 30, 2008, Rusin had paid the respondent $6,000 for the representation. Following resolution of some of the issues before the court at the hearing on May 30, 2008, Rusin sent communications to the respondent on a regular basis concerning additional matters that he wanted resolved.

On June 8, 2008, and June 10, 2008, respectively, Rusin sent the respondent an email message asking questions regarding the pension valuation issue. On June 21, July 1, July 2, and twice on July 6, 2008, Rusin sent the respondent email messages, seeking the respondent's advice with respect to "ongoing issues" concerning communication and visitation with his two minor children. The respondent neither responded to these communications, nor clarified with Rusin that the subject of these communications constituted "new" representation that required a new fee contract and payment of an additional fee. The respondent did not send Rusin a letter indicating that he considered his legal services completed, and the representation to be at an end, at the conclusion of the hearing on May 30, 2008.

On July 24, 2008, the respondent entered into a second contract for representation with Rusin, pursuant to which Rusin paid the respondent $1,000 towards a $3,000 retainer fee to handle the issues of custody and child support modification. Rusin informed the respondent that he wished to actively pursue a change of venue to St. Johns County, Florida, because Rusin's former wife recently had relocated there. Rusin told the respondent that he expected the respondent to take action on his behalf to meet these objectives. Rusin advised the respondent that time was of the essence in resolving these matters because he anticipated being transferred out of the state in connection with his employment within the coming year.

On July 28, 2008, and July 30, 2008, respectively, Rusin sent the respondent email messages, asking the respondent various questions. The respondent replied on August 6, 2008, advising Rusin to schedule a short teleconference to discuss these matters. Rusin called in for the teleconference, as instructed, but the respondent did not. On August 8, 2008, Rusin sent the respondent an email message regarding the missed teleconference. On August 12, 2008, the respondent sent Rusin an email message advising him that he was working on the case, and

that he would contact him later that day. Between August 13 and September 21, 2008, Rusin sent three email messages and one letter, and made repeated phone calls to the respondent regarding status updates, complaining about the lack of communication, and asking for an itemized bill, without any response. Between July 24 and October 24, 2008, the respondent communicated with Rusin four times, but his communication did not adequately address the specific matters raised in Rusin's numerous inquiries.

On September 22, 2008, Rusin terminated the respondent's services, demanded an itemized bill, and filed a grievance with the Florida Bar.

## Count II (The Dore Complaint)

In or around 2006, Tom Dore and Maureen Dore (hereinafter together the Dores), who resided in St. Lucie County, Florida, contracted with Tide Way Homes, Inc. (hereinafter Tide Way) to build a new home in Putnam County, Florida. In or around November 2006, Tide Way contracted with Masco Contractor Services Central, Inc., now known as Builder Services Group, Inc. (hereinafter Masco), to build cabinetry for the home. On or about February 16, 2007, after Tide Way failed to pay for the services rendered, Masco filed a construction lien in the amount of $3,130 and, on or about April 9, 2007, commenced an action in Putnam County, Florida, to foreclose its lien against the Dores.

Initially, the Dores were represented by Michael Chiumento, whose law firm also represented Tide Way. Subsequently, the Dores decided to hire the respondent. On or about October 31, 2007, the Dores paid the respondent a nonrefundable fee of $7,500 to assert a claim against Tide Way, and to defend them in the litigation commenced by Masco.

During his representation of the Dores, the respondent sought, and obtained, opinions and advice from two other attorneys experienced in lien matters. However, the respondent did not adequately discuss with the Dores the wisdom of paying legal fees that were more than double what was owed in connection with Masco's lien, or the fact that they did not have a legally valid defense to the lien. Moreover, the respondent did not clearly explain to the Dores that, had Masco's action been successful, they would have been obligated to pay Masco's attorneys' fees. Finally, the respondent failed to adequately explain to the Dores the possible consequences if their claim against Tide Way were unsuccessful.

On November 13, 2007, the respondent attended a hearing on behalf of the Dores in the Masco litigation. At that time, he advised the court that he had not yet received, from prior counsel, the exhibits to the complaint. The court directed the respondent to review the court file, and obtain copies of the exhibits therein.

On or about December 3, 2007, the respondent filed the Dores' answer and affirmative defenses in the Masco litigation, in which he alleged, as an affirmative defense, that the Dores had not received the exhibits attached to the complaint.

On December 7, 2007, Masco's counsel wrote to the respondent, enclosing the exhibits to the complaint, and advising that he expected that the respondent would now serve an amended answer, without the assertion that he did not have the exhibits. The respondent did not amend the answer and affirmative defense in the Masco litigation to exclude the assertion that he did not have the exhibits.

On or about December 26, 2007, Masco's counsel moved for an extension of time to respond to the affirmative defenses, asserting that nearly one month after being advised by the court that he could obtain copies of the exhibits from the court file, the respondent filed his answer with a frivolous affirmative defense that he did not have the exhibits to the complaint. Masco's counsel further stated that he had provided the respondent with the exhibits, and that he had asked the respondent to amend his answer without the frivolous affirmative defense. Masco's counsel thus requested that the court sanction the respondent pursuant to Fla Stat § 57.105.

On or about January 2, 2008, Masco's counsel moved pursuant to rule 1.140 (b) of the Florida Rules of Civil Procedure to strike two of the Dores' affirmative defenses for failure to plead legally cognizable affirmative defenses.

On January 8, 2008, the respondent advised his paralegal, but not the Dores, that he was not concerned with the outcome of the Masco litigation, and that he believed that Masco would prevail. The respondent advised that the main focus needed to be on Tide Way, because Tide Way had been paid by a bank from the proceeds of a construction loan for the completed work that was the subject of the Masco litigation, and then failed to pay Masco as required. The respondent later explained that it was his understanding that, once he commenced an action on behalf of the Dores against Tide Way, its law firm would settle the claim because the Dores had a bona fide grievance against

the law firm for an ethics breach with respect to conflict of interest.

On or about February 11, 2008, the court entered an order granting Masco's motion to strike the Dores' affirmative defenses in the Masco litigation.

On or about February 28, 2008, the respondent moved on behalf of the Dores in the Masco litigation to file and serve a third-party complaint upon a third-party defendant, i.e., Tide Way, which the court granted. The respondent alleged in the third-party complaint that Tide Way breached its contract with the Dores by failing to convey clear title to the property, breached the provisions of the subject warranty deed by failing to pay Masco, resulting in the imposition of a claim of lien, and engaged in fraud by stating in an affidavit that it had paid, or made arrangements to pay, Masco.

Prior to commencing the third-party action against Tide Way on behalf of the Dores, the respondent made inquiries of the attorney representing Tide Way regarding money being held in escrow by or for Tide Way. He thereafter failed to take adequate steps to freeze or attach the account or accounts in which that money had been deposited. The respondent did not discuss with the Dores the need to secure a bond or take other steps necessary to secure the funds held in escrow by or for Tide Way by attaching, freezing, or otherwise sequestering those funds. Nor did he discuss with them the risk of substantial damages if the third-party action against Tide Way, or the concomitant attachment of accounts held by Tide Way, were subsequently determined to be wrongful, improper, or unwarranted.

On March 27, 2008, Maureen Dore sent the respondent an email requesting a status update, and inquiring as to "how much the settlement was for" with respect to Masco's claim, and how much money the respondent was seeking in the third-party action against Tide Way. Maureen Dore also inquired as to whether Chiumento, the attorney acting as escrow agent for Tide Way, had released any of the escrowed funds that he allegedly had on deposit.

By email dated March 31, 2008, the respondent advised Maureen Dore, for the first time, that Masco would soon obtain summary judgment against the Dores in the Masco litigation. The respondent further advised that Tide Way might be in default in the near future if it failed to file an answer to the third-party complaint. The respondent advised Maureen Dore that he delayed the conclusion of the Masco litigation as long

as he could, but was hopeful that his plan to obtain reimbursement from Tide Way would be successful.

By email to the respondent dated March 31, 2008, Maureen Dore expressed "dismay" at the respondent's statement that they could not successfully defend against Masco's claim, and asked the respondent whether or not they "ever stood a chance." Maureen Dore asked, further, whether the entry of summary judgment against the Dores would be worse than if they had not followed the respondent's advice in delaying the disposition of the Masco litigation and had paid the lien instead. Finally, Maureen Dore inquired as to whether it would cost the Dores more money if summary judgment were entered against them.

On April 1, 2008, the respondent emailed Maureen Dore, and advised her that settling the action commenced by Masco would not have been of any benefit, because the case needed to remain pending in order for the respondent to commence the third-party action against Tide Way. The respondent advised Maureen Dore that, if Tide Way defaulted, he would be able to file for entry of a default judgment in the Dores' favor against Tide Way. The respondent did not advise the Dores concerning what additional fees and costs they might incur if Tide Way did not default, or, if he successfully obtained a judgment against it, what the fees and costs associated with collecting on that judgment might total, or even the likelihood of collecting on a judgment against Tide Way.

On or about April 1, 2008, the court summarily entered a money judgment in favor of Masco against the Dores in the amount of $3,859.29, plus attorney's fees and costs to be determined, with interest to run from the date that the judgment was entered. The court reserved jurisdiction to set a sale date for the property.

On or about April 3, 2008, a clerk's default was entered against Tide Way.

On or about April 4, 2008, counsel for Tide Way filed a notice of appearance and a motion to dismiss the Dores' third-party complaint, based on an arbitration clause in the Dores' contract with Tide Way. The respondent did not attempt to negotiate a settlement of the claim against Tide Way.

The respondent's first attempt to orally communicate with the Dores following their initial consultation was on April 4, 2008, when he attempted to call them. Between April 4, 2008,

and April 23, 2008, the respondent attempted to call the Dores three times. The respondent was not successful in contacting the Dores.

On May 12, 2008, the respondent wrote to the Dores concerning the impending entry of a final judgment of foreclosure against them, in favor of Masco. For the first time, the respondent advised the Dores that they needed to pay the judgment debt to Masco in order to forestall final foreclosure of the lien. The respondent further advised that, because he had been unable to contact them by telephone, he "assumed" that they no longer wanted him to represent them in their third-party action against Tide Way. This was the first letter the respondent wrote to the Dores since being retained by them. Upon receipt of the respondent's letter dated May 12, 2008, the Dores called the respondent, and left him a message inquiring as to the amount they needed to pay in order to fully satisfy the money judgment, because they were uncertain as to what the attorney's fees, costs, and interest totaled. The respondent failed to respond to their message. In the absence of advice from the respondent, the Dores did not pay the judgment debt at that time.

On or about May 12, 2008, the respondent served a motion for leave to withdraw as counsel for the Dores, alleging that the Dores had failed to meet their contractual obligations with the respondent by virtue of their failure to respond to his requests to contact him, which commenced on April 4, 2008. On or about May 14, 2008, the court entered an order granting the respondent's motion for leave to withdraw as counsel. On or about May 14, 2008, in light of the Dores' telephone call, the respondent served a motion to vacate the order granting his motion for leave to withdraw, which the court granted on May 23, 2008. The respondent did not immediately advise the Dores that the court had, at his request, vacated his motion for permission to withdraw from their case, and that he still was representing them.

On or about June 17, 2008, the Dores wrote to the respondent requesting that, by June 24, 2008, he provide them with a full refund of the $7,500 fee they had paid him. When the respondent did not reply to that letter, or refund the fee, the Dores wrote the respondent a second letter, dated June 30, 2008, requesting that he provide them with a full refund by July 4, 2008. When the respondent once again failed to reply to the Dores' letter, or refund the fee, the Dores wrote a third let-

ter, dated July 11, 2008, expressing their belief that the respondent was no longer representing them. They advised the respondent that, as a result, they believed they were due a refund of the fee they had paid him, and that they did not understand the respondent's refusal to communicate with them.

In or around August 2008, the respondent spoke to Maureen Dore concerning a settlement offer to resolve the outstanding judgment entered in favor of Masco. Maureen Dore advised the respondent that she and her husband were willing to pay $3,039, the original amount of the lien, and to pay attorney's fees in the amount of $3,000.

On or about September 5, 2008, the respondent served a notice of hearing, setting down Tide Way's motion to dismiss the Dores' third-party complaint against them for a hearing to be conducted on September 10, 2008. The Dores did not receive a copy of the notice of hearing from the respondent until after September 10, 2008. The respondent did not include any communication regarding whether or not he intended to represent them at the hearing.

The respondent, on behalf of the Dores, attended the hearing scheduled for September 10, 2008, and argued that the disputed arbitration clause in the contract between Tide Way and the Dores was unenforceable because it required the Dores to use an arbitrator that had no registered agent in Florida, was not recognized by a reputable arbitration group, and which had been shown to be disreputable in other civil cases. The court granted Tide Way's counsel time to research whether the arbitration clause was invalid, and to file a memorandum of law explaining why the motion to dismiss the third-party complaint should be granted. The respondent did not advise the Dores as to the outcome of the September 10, 2008, hearing. Tide Way's counsel did not file a memorandum in support of the motion to dismiss the third-party complaint. The respondent did not pursue the matter further.

On or about September 22, 2008, after not hearing from the respondent regarding the settlement offer or the outcome of the September 10, 2008, hearing, Maureen Dore sent the respondent an email, reiterating the Dores' desire to make the settlement offer to Masco, which Maureen Dore had discussed with the respondent in August 2008, and asking the respondent to advise her as to whether Masco would accept the offer. After not hearing from the respondent, Maureen Dore tele-

phoned his office and left a message, in or around late October 2008. When the respondent failed to respond to her telephone call, Maureen Dore sent him an email on October 24, 2008, once again inquiring as to whether the respondent had presented the Dores' settlement offer to Masco and, if so, the outcome of that presentation. The respondent failed to respond to the Dores' repeated inquiries, and also failed to convey the settlement offer to Masco. After hearing nothing further from the respondent, the Dores wrote the respondent on or about December 3, 2008, terminating his services effective December 9, 2008. The Dores once again requested a full refund of the fee paid to the respondent, and that the respondent turn over to them all of their files.

On or about January 14, 2009, the respondent served another motion for leave to withdraw as the Dores' counsel, which the court granted on January 21, 2009. On or about that same date, counsel for Masco served upon the respondent, as counsel for the Dores, a motion for the entry of a final judgment of foreclosure, to recover liquidated attorney's fees and costs, and to schedule a judicial sale of the Dores' property. Counsel for Masco noticed his motion to be heard on February 18, 2009. On February 20, 2009, the court entered a final judgment of foreclosure to secure the amount of $11,502.50 in favor of Masco, and set a judicial sale of the property for April 20, 2009.

In or around April 2009, the Dores settled Masco's claim themselves, prior to the sale date, for the approximate amount of $16,000. Between the respondent's fee of $7,500, and the amount paid to settle the final judgment foreclosing Masco's lien, the Dores paid approximately $23,500 to resolve a $3,039 lien.

Based upon the foregoing, a consent judgment was entered against the respondent, upon his conditional plea of guilty, to violations of the Rules Regulating the Florida Bar (hereinafter Fla Bar Rules) rules 4-1.3 (a lawyer shall act with reasonable diligence and promptness in representing a client), 4-1.4 (a) (a lawyer shall: [1] promptly inform a client of any decision or circumstance with respect to which the client's informed consent is required; [2] reasonably consult with the client about the means by which the client's objectives are accomplished; [3] keep the client reasonably informed about the status of the matter; [4] promptly comply with reasonable requests for information; and [5] consult with the client about any relevant limitation on the lawyer's conduct when the lawyer knows or

reasonably should know that the client expects assistance not permitted by the Florida Rules of Professional Conduct), 4-1.4 (b) (a lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation) and 4-1.16 (d) (upon termination of the representation, a lawyer shall take all steps reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee or expense that has not been earned or incurred), in connection with count I (the Rusin complaint), and to violations of Fla Bar Rules rules 4-1.1 (competent representation), 4-1.3 (diligence), 4-1.4 (a) (communication) and (b) (explanation of legal matter to client so as to provide a basis for informed decision making) and 4-1.16 (d) (duties imposed upon an attorney upon the termination of representation) in connection with count II (the Dore complaint).

In determining an appropriate measure of discipline to impose in connection with the Rusin and Dore matters, the Supreme Court of Florida considered the American Bar Association Standards for Imposing Lawyer Sanctions, as well as the respondent's personal history, the fact that he was 51 years of age, that he was admitted to the Florida Bar in 1992, and that he had a prior disciplinary history (admonishment for minor misconduct involving the representation of clients with conflicting interests, and charging an excessive fee). Additionally, the Court considered the respondent's "substantial experience" as an aggravating factor, while noting the following mitigating factors: personal or emotional problems; cooperative attitude toward the proceedings; character or reputation; interim rehabilitation; and remorse. Under the totality of the circumstances, a reprimand was imposed pursuant to the order of the Supreme Court of Florida that was filed on July 31, 2012.

Order of the Supreme Court of Florida Filed June 6, 2014

The order of the Supreme Court of Florida that was filed on June 6, 2014 (145 So 3d 829 [2014]), was predicated upon a complaint, a stipulation for the entry of a consent judgment, a conditional plea of guilty for a consent judgment, and a report of a referee accepting a consent judgment, as follows:

## Count I (The Weiss Complaint)

In or around May 2010, David Weiss paid the respondent the sum of $4,500 to represent him in a child support matter. Between May 2010 and mid-August 2010, the respondent failed to adequately communicate with Weiss. Since the time for the filing of a response in the child support matter was looming, Weiss left a message for the respondent, on or about August 20, 2010, terminating his services and informing the respondent that he had retained another attorney. Weiss also requested an accounting of the respondent's services, and that a complete copy of his file be sent to his new attorney.

Thereafter, on August 24, 2010, in a conversation with a member of the respondent's staff, Weiss reaffirmed that he had terminated the respondent's services. Nevertheless, on that same date, the respondent filed a notice of appearance on behalf of Weiss in the support matter. Weiss's new attorney filed an answer in the support matter on September 2, 2010. On September 10, 2010, Weiss's new attorney and the respondent jointly filed a notice substituting the new attorney for the respondent as counsel of record. An order approving the substitution of counsel was entered on September 16, 2010.

In addition to failing to provide an accounting of his services to Weiss, the respondent's invoices contained errors related to the work performed. The respondent also failed to respond to the Florida Bar's inquiry into his conduct.

## Count II (The Phillips Complaint)

Jason Phillips hired the respondent to defend him in connection with a petition for an injunction against domestic violence filed by his mother, and a later criminal case involving a violation of the injunction. In both instances, the respondent failed to adequately and clearly communicate with Phillips regarding the obligations that Phillips would need to meet to comply with the court's orders, and failed to ensure that Phillips was aware of court hearings. The respondent failed to ensure that Phillips was aware that the respondent was not going to represent him in an ejectment action. In addition to the foregoing, the respondent failed to timely respond to the Florida Bar's inquiries.

## Count III (Sua Sponte Investigation)

In or around July 2012, the Florida Bar received a notice of insufficient funds in connection with the respondent's trust account. The respondent failed to timely provide the records

requested by the Florida Bar. After the records were received, and the respondent's trust account was audited, although no evidence of misappropriation was evident, the respondent's records showed that numerous technical violations existed. For example, the journal provided by the respondent was not in compliance with applicable rules, it did not have a running balance, there were two entries for every transaction (one as a positive amount, and one as a negative amount), and many transactions lacked descriptions. Additionally, a referral fee was unintentionally deposited into the respondent's trust account, which he failed to withdraw in a timely manner. Rather, he left the fee in the trust account for approximately two months. The respondent subsequently brought his trust account records into substantial compliance.

## Count IV (The Mann Complaint)

Frances Mann hired the respondent in March 2011 to represent her in a proceeding for the dissolution of her marriage. While the respondent performed significant work on the case, he failed to act diligently on behalf of Mann, and failed to timely respond to all of her inquiries. Upon becoming dissatisfied with the respondent's performance, Mann terminated the respondent's services on or about January 24, 2012. Mann hired another attorney, and the respondent signed the stipulation for substitution of counsel on January 31, 2012. In addition to the foregoing, the respondent failed to timely respond to the Florida Bar's inquiry into the matter.

## Count V (The Cook Complaint)

Gloria Cook (hereinafter Gloria) paid the respondent the sum of $5,500 on or about November 8, 2011, to assist her grandson in a marital dissolution matter. Despite having the grandson's permission to speak with Gloria, the respondent failed to adequately communicate with either Gloria or her grandson. The respondent asserts that he prepared numerous answers and counter-petitions on behalf of the grandson, but the grandson always wished to have changes made to the pleadings. While the record in the dissolution proceeding does not reflect that the respondent entered a notice of appearance, it does show that the respondent filed a responsive pleading on or about March 9, 2012. Thereafter, in or about late April or early May 2012, the respondent's representation of the grandson was terminated, and a motion for substitution of

counsel was filed on or about May 8, 2012. Gloria sought a refund from the respondent of the fees that she had paid him. In addition to the foregoing, the respondent failed to timely respond to the Florida Bar's inquiry.

### Count VI (The Bernard Complaint)

Debra Bernard hired the respondent in or about September 2009 to handle a proceeding for the dissolution of her marriage. During the time that the respondent was involved in the matter, he failed to adequately communicate with Bernard. In addition, the respondent failed to timely respond to the Florida Bar's inquiry.

### Count VII (The McAfee Complaint)

Miriam McAfee hired the respondent in or around early June 2011 to draft a supplemental petition for modification and contempt in a matrimonial matter. While the respondent performed substantial services for McAfee, he was not always diligent in the manner in which he represented her. Additionally, he failed to adequately communicate with her, such that she could make timely, informed decisions regarding her matter. In addition, the respondent failed to timely respond to the Florida Bar's inquiry.

Based upon the foregoing, a consent judgment was entered against the respondent, upon his conditional plea of guilty, to violations of Fla Bar Rules rules 4-1.3 (diligence), 4-1.4 (communication), 4-1.5 (excessive fee) and 4-8.4 (misconduct) in connection with count I (the Weiss complaint), to violations of Fla Bar Rules rules 4-1.3 (diligence), 4-1.4 (communication), 4-1.16 (duties imposed upon an attorney upon termination of representation) and 4-8.4 (misconduct) in connection with count II (the Phillips complaint), to violations of Fla Bar Rules rules 4-8.4 (misconduct), 5-1.1 (trust accounts) and 5-1.2 (trust accounting records and procedures) in connection with count III (sua sponte investigation), to violations of Fla Bar Rules rules 4-1.3 (diligence) and 4-8.4 (misconduct) in connection with count IV (the Mann complaint), to violations of Fla Bar Rules rules 4-1.3 (diligence), 4-1.4 (communication), 4-1.5 (excessive fee), 4-1.16 (terminating representation) and 4-8.4 (misconduct) in connection with count V (the Cook complaint), to violations of Fla Bar Rules rules 4-1.4 (communication) and 4-8.4 (misconduct) in connection with count VI (the Bernard complaint), and to violations of Fla Bar Rules rules 4-1.3 (dili-

gence), 4-1.4 (communication) and 4-8.4 (misconduct) in connection with count VII (the McAfee complaint).

In determining an appropriation measure of discipline to impose with respect to the sua sponte investigation and the Weiss, Phillips, Mann, Cook, Bernard, and McAfee matters, the Supreme Court of Florida considered the American Bar Association Standards for Imposing Lawyer Sanctions. Additionally, the Court considered the respondent's "substantial experience" and "multiple offenses" as aggravating factors, while noting the following mitigating factors: personal or emotional problems; interim rehabilitation; and remorse. Under the totality of the circumstances, the respondent was suspended from the practice of law in Florida for a period of 30 days pursuant to the order of the Supreme Court of Florida that was filed on June 6, 2014.

The Instant Proceeding for the Imposition of Reciprocal Discipline

In the instant proceeding, on July 30, 2014, the Grievance Committee served the respondent with a notice pursuant to 22 NYCRR 691.3 "according him the opportunity, within 20 days of the giving of such notice, to file a *verified statement*, setting forth any defense . . . enumerated under subdivision [c] . . . and a written demand for a hearing" (emphasis added).

In an unsworn letter dated August 15, 2014, the respondent stated, "[i]t is my hope that this response will mitigate sanctions if and when they are imposed." He stated that he has been admitted to the practice of law in Florida since 1993. At the time of his admission there, he ceased practicing law in the State of New York. Nonetheless, he has always maintained "good standing" here. Although the respondent explained that he understood that the findings of the Supreme Court of Florida are final and, as such, are "the law of the land," he expressed his opinion that the initial reprimand set forth in the order of the Supreme Court of Florida filed July 31, 2012, was "draconian" under the circumstances. Nevertheless, he abided by the findings, and asserted that, since the expiration date of the probationary period that was imposed, he has not been found to have violated any ethical rules. While it is true that multiple other complaints were filed, which ultimately resulted in a 30-day suspension from the practice of law following the reprimand, all of those complaints either were received before the respondent's reprimand or, if received after, related to conduct which occurred before the reprimand was issued. In

any event, the respondent successfully completed his period of suspension, and is, once again, an attorney in "good standing" in Florida. During the period in which the misconduct occurred, the respondent was going through "unexpected . . . turmoil" in his personal life, including the sudden death of his sister, his mother's diagnosis of, and radical treatment for, breast cancer, a bitter and contentious divorce after 22 years of marriage, and the death of his mother-in-law. Also, during the same period, the respondent suffered "financial collapse" occasioned, in part, by the departure of his long-time law partner, as well as the economic downturn and loss of business resulting from the "highly publicized" Florida Bar complaints. In conclusion, the respondent asserted that he remains "very interested" in being a member in good standing of the New York Bar.

Inasmuch as the respondent has failed to set forth any of the defenses to the imposition of discipline enumerated in 22 NYCRR 691.3 (c) or request a hearing pursuant to 22 NYCRR 691.3 (d), there is no impediment to the imposition of reciprocal discipline.

The jurisdiction in which the respondent resided, and practiced law, at the time of the charged misconduct, has the greatest interest in the issue of sanction (*see Matter of Munroe*, 89 AD3d 1, 7 [2011]). Therefore, "when the sanction prescribed by the foreign jurisdiction is not inconsistent with the sanction for similar misconduct in this jurisdiction, the Court should impose the same sanction" (*Matter of Sirkin*, 77 AD3d 320, 323 [2010]).

We conclude that the sanctions imposed upon the respondent in Florida—a public reprimand and a 30-day suspension, respectively—are not consistent with the sanctions for a similar pattern of misconduct in this jurisdiction. Taking into consideration the mitigating and aggravating circumstances considered by the Supreme Court of Florida, the respondent is suspended from the practice of law in New York for a period of six months.

ENG, P.J., MASTRO, RIVERA, SKELOS and DILLON, JJ., concur.

Ordered that the Grievance Committee's application for reciprocal discipline pursuant to 22 NYCRR 691.3 is granted; and it is further,

Ordered that the respondent, Charles A. Esposito, is suspended from the practice of law for a period of six months, effective immediately, with leave to apply for reinstatement

upon the expiration of said period, upon furnishing satisfactory proof that during said period he (1) refrained from practicing or attempting to practice law, (2) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (*see* 22 NYCRR 691.10), (3) complied with the applicable provisions of 22 NYCRR 691.11 (c) (4), and (4) otherwise properly conducted himself, and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Charles A. Esposito, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Charles A. Esposito, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).