Matter of Wolman (2024 NY Slip Op 00323)

Matter of Wolman

2024 NY Slip Op 00323

Decided on January 24, 2024

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on January 24, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
LARA J. GENOVESI, JJ.

2022-04810

[*1]In the Matter of Jay M. Wolman, admitted as Jay Marshall Wolman, an attorney and counselor-at-law. (Attorney Registration No. 3907052)

The respondent was admitted to the Bar in the State of New York at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on March 28, 2001, under the name Jay Marshall Wolman. By order to show cause dated August 11, 2022, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed by an order of the Superior Court of the State of Connecticut dated January 28, 2022.

Catherine A. Sheridan, Hauppauge, NY (Rona I. Kugler of counsel), for Grievance Committee for the Tenth Judicial District.
Jay M. Wolman, Long Island City, NY, respondent pro se

PER CURIAM.

OPINION & ORDER
By order dated January 28, 2022, the Superior Court of the State of Connecticut (hereinafter the Connecticut court) imposed a public reprimand on the respondent for his professional misconduct.
The Connecticut Disciplinary Proceeding
The respondent represented the defendants in a consolidated matter titled Lafferty v Jones, et al., Sherlach v Jones, et al., and Sherlach v Jones, et al., in the State of Connecticut, Superior Court, Waterbury Judicial District. The respondent's misconduct stemmed from his behavior at a remote videotaped deposition held on September 17, 2021, in questioning a plaintiffs' witness, Robert Jacobson. Jacobson worked on video editing projects for defendants Alex Jones and Free Speech Systems, LLC.
At the deposition, Jacobson, who appeared without counsel, testified that he had been employed by defendant Free Speech Systems, LLC, until his sudden termination by defendant Jones in 2013 or 2014, after Jacobson voiced his concern that Jones and his staff writers were not engaged in legitimate journalism in their reporting of the 2012 Sandy Hook Elementary School mass shooting. After his termination, Jacobson filed a complaint with the Equal Employment Opportunity Commission alleging antisemitism by Jones and his staff.
At the time of the deposition, Jacobson had been displaced from his home in Louisiana by Hurricane Ida earlier that month and was temporarily residing in New York. He had left Louisiana in haste, and taken only a few articles of clothing, his cell phone, and his car. Jacobson testified that he had searched for physical documents responsive to plaintiffs' subpoena while he was in Louisiana, but those documents had been lost or misplaced. Jacobson further testified that his cell phone had cloud storage, but contained no documents responsive to the [*2]subpoena served on him. The respondent, nevertheless, asked Jacobson to conduct a search of his phone. The colloquy between the respondent, Jacobson, and plaintiffs' counsel, Christopher M. Mattei (hereinafter Counsel), was as follows:
Respondent: "Are you able to search your email through that phone?"
Jacobson: "I can."
Respondent: "Can you "
Counsel: "I'm going to interject here. I'm going to interject here. Mr. Jacobson has not been served by you with any sort of formal process requesting production from him. And I think it would be improper to ask him to, in the middle of the deposition, search his phone for documents where you have not yet asked him for, formally, for any sort of production."
Respondent: "Your objection is noted. Would you, Mr. Jacobson, since you have brought your phone to the deposition, kindly search your email or the phrase 'Sandy Hook'?"
Jacobson: "Am I legally required to do that?"
Respondent: "You're here. And you're subpoenaed here, and you brought your
documents, your entire email account, to the deposition."
Counsel: "Yeah. First of all, that is highly improper for you to answer that
question in that way, Mr. Wolman. You know that this witness is under no legal obligation to search his phone at your request. You know that. And "
Respondent: "No, I don't know that. Do you have a case to cite?"
Counsel: "The ethical response to that question, if you're going to answer it at
all, is to instruct him accurately, that he is not legally required to
search his phone at your request."
Respondent: "I disagree. And I don't need any instructions from you about ethics
of all people."
Counsel: "You do. And maybe you should consult with Mr. Randazza."
Respondent: "Thank you. Are you refusing my request, Mr. Jacobson?"
Jacobson: "I don't have it  I don't have my own independent legal counsel
here to advise me. So "
Respondent: "Did you have an opportunity to bring a lawyer?"
Jacobson: "I have no money for a lawyer, so no."
Respondent: "Did you ask any lawyer to come with you?"
Jacobson: "I wasn't advised either which way."
Respondent: "Did anybody tell you you couldn't bring a lawyer?"
Jacobson: "Nobody told me one way or the other."
Respondent: "Would you like an opportunity to consult with a lawyer?"
Jacobson: "If that's my option, yes."
Respondent: "All right. How much time do you need today to consult with a lawyer as to whether or not you have an obligation to search your phone, which you brought with you today?"
Counsel: "You know, Attorney Wolman, that he has no obligation at your
request to search his phone."
Respondent: "I don't know that "
Counsel: "That obligation would only arise if you served him with a formal
request under the rules of Connecticut. So I think for you to continue to suggest to this witness that he might have a legal obligation at this moment to search his phone in response to a request from you is unethical. And what I would like to do now is get Judge Bellis on
the phone right now, so that she can weigh in on your conduct."
Respondent: "Please."
After plaintiffs' counsel contacted the court to schedule a conference, the respondent continued to pursue the line of questioning.
Counsel: "I sent a request to . . . Judge Bellis's clerk. I've copied you, Attorney
Wolman. If you'd like, you can continue with a different line of questioning, or we can wait until Judge Bellis responds."
Respondent: "Mr. Jacobson, are you refusing my request?"
Jacobson: "I'm  again, I don't have legal counsel to advise me how to answer
that question."
Respondent: "I understand."
Counsel: "He's already indicated that if he has an option to consult counsel, he
would like it. You gave him that option."
Respondent: "And he has not called counsel. Would you like to call a lawyer right
now? Mr. Jacobson, are you going to call a lawyer right now?"
Counsel: "Mr. Jacobson, let me inform you that Judge Bellis has been
contacted. She is the presiding judge in this matter. This issue will be presented to her. If you'd prefer to wait to decide whether you think
counsel is necessary for Judge Bellis to address this issue, you're welcome to wait."
Jacobson: "I'll wait for the judge."
Respondent: "Chris, why are you interrupting my deposition? I did not interrupt
yours. This is my questioning "
Counsel: "The reason I'm interrupting you, Jay, is because I believe you're
engaged in unethical conduct towards this witness and it needs to stop. And since you're unwilling to stop it on your own, we're going [*3]to get Judge Bellis on the phone. That's why I've interrupted your questioning."
Respondent: "It is a given in every deposition, when a witness brings documents
to that deposition that all parties present at the deposition get to inspect the documents brought. He has brought his phone; it
contains documents. I am asking "
Counsel: "It does not. It does not. He has - he has not brought documents. He
has brought his phone. What you have done is ask him to search his phone. And then when he asked you whether he was legally required to do that, you suggested that he was."
Respondent: "Yes. And he's permitted to go get himself a contrary opinion. He has not done so. You are not his lawyer. You have no place advising him."
Counsel: "I am not his lawyer. But it is my obligation to protect somebody
who's unrepresented for the unethical conduct of another attorney."
Respondent: "Once more, my conduct is purely within bounds. He had a full and
fair opportunity to seek counsel. No, I did not request documents from the witness, not knowing he was not going to abide his obligation to comply with your subpoena in the first instance."
Counsel: "You have no reason to think he hasn't complied. But why don't you
ask questions related to this case or not. But "
Respondent: "I am asking questions related to the case."
Counsel: " I think it's clear now  I think it's clear now that a request has
been made of Judge Bellis to review this issue and to review your conduct. And Mr. Jacobson has indicated that he is not going to
make a determination as to whether to seek counsel until Judge Bellis has weighed in. Do you want to persist "
Respondent: "I am making a record. Are you refusing to produce documents
pursuant to the search I have requested?"
Counsel: "I object. This is crazy."
Jacobson: "I'm going to wait for the judge."
Respondent: "Is that a no, Mr. Jacobson?"
Jacobson: "That's me waiting for the judge."
Respondent: "Are you refusing to produce it right now?"
Jacobson: "I'm neither refusing or not refusing. I'm waiting to hear what the
judge has to say."
Respondent: "And what are you doing to seek judicial intervention at this time?"
Counsel: "A request has been made. You're on the email. What are you doing?"
Respondent: "Are you seeking judicial intervention, Mr. Jacobson?"
Jacobson: "I don't understand the question."
Respondent: "Do you have a lawyer you can call?"
Jacobson: "Not at this time."
The Connecticut court issued an order to show cause on October 7, 2021, to address whether the respondent violated certain rules of professional conduct during the deposition. A hearing was held on December 15, 2021, in which the respondent appeared with counsel and exhibits were entered. In a written order dated January 28, 2022, Judge Bellis found by clear and convincing evidence that the respondent's conduct "exceeded the permissible parameters of legitimate advocacy" and violated rule 3.5(4) (engaging in conduct intended to disrupt a tribunal) of the Connecticut Rules of Professional Conduct. Judge Bellis also found by clear and convincing evidence that the respondent violated rule 4.3 (dealing with unrepresented person) of the Connecticut Rules of Professional Conduct when he failed to inform Jacobson that the respondent could not give Jacobson legal advice instead of persuading Jacobson that he was legally obligated to search his phone.
In assessing the appropriate discipline, Judge Bellis noted that the respondent's conduct was knowing and intentional. The Connecticut court determined that there was "no doubt that the deponent was mistreated and that this deposition conduct has a potential chilling effect on other witnesses in this case, such that there is both actual and potential injury." Turning to the mitigating factors, the court stated that the respondent had a clean disciplinary history since his Connecticut admission in 2012 and his admission to other jurisdictions since 2001, and he cooperated with the disciplinary process. However, in May 2021, the court warned the respondent from invoking the rules of professional conduct as a weapon in his filings, and in June 2021 warned the respondent to refrain from inappropriate commentary and ad hominin criticism of the court in his filings. Thereafter the court was confronted with the misconduct at the September 17, 2021 deposition. The court also considered Jacobson's vulnerability and that the respondent had not fully expressed his remorse.
New York Proceeding
By order to show cause dated August 11, 2022, this Court directed the respondent to show cause why discipline should not be imposed upon him pursuant to 22 NYCRR 1240.13, based on the misconduct underlying the discipline imposed by the order of the Connecticut court dated January 28, 2022, by filing an affidavit in accordance with 22 NYCRR 1240.13(b) with the Clerk of this Court, with proof of service upon the Grievance Committee for the Tenth Judicial District on or before September 28, 2022.
In his response to this Court's order to show cause, the respondent acknowledges that he does not raise any defense under 22 NYCRR 1240.13(b). He states, inter alia, that reciprocal discipline would be unjust pursuant to 22 NYCRR 1240.13(c) because "[t]he purpose of the reprimand has been fulfilled." The respondent has been "formally rebuked and cautioned to not repeat such conduct. And, the public has been informed of this." He states that given the newsworthiness of the lawsuit, the proceeding was publicized in the press. A reciprocal censure in this jurisdiction, the respondent argues, "would only serve to confuse the public and inflict harm beyond the purpose of reciprocal discipline."
In response, the Grievance Committee notes that the respondent fails to raise any of the defenses provided to him under 22 NYCRR 1240.13(b)(1) or (2), and that nothing in the record suggests that reciprocal discipline would be unjust.
Findings and Conclusion
Based on the misconduct underlying the discipline imposed by the order of the Connecticut court, we find that the imposition of reciprocal discipline is warranted, as the misconduct found by the Connecticut court is also misconduct in New York. This Court has found that "'when the sanction prescribed by the foreign jurisdiction is not inconsistent with the sanction for similar misconduct in this jurisdiction, the Court should impose the same sanction'" (Matter of Esposito, 126 AD3d 93, 109, quoting Matter of Sirkin, 77 AD3d 320, 323). Therefore, we conclude that the appropriate sanction is a public censure.
LASALLE, P.J., DILLON, DUFFY, BARROS and GENOVESI, JJ., concur.
ORDERED that pursuant to 22 NYCRR 1240.13, the respondent, Jay M. Wolman, admitted as Jay Marshall Wolman, is publicly censured.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court