Matter of Morburger (2024 NY Slip Op 05449)

Matter of Morburger

2024 NY Slip Op 05449

Decided on November 6, 2024

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 6, 2024
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
VALERIE BRATHWAITE NELSON, JJ.

2023-09693

[*1]In the Matter of Arthur Joseph Morburger, admitted as Arthur J. Morburger an attorney and counselor-at-law. (Attorney Registration No. 2468338)

The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on June 21, 1961, under the name Arthur J. Morburger. By order to show cause dated November 2, 2023, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed by an order of the Supreme Court of Florida dated August 25, 2022.

Catherine A. Sheridan, Acting Chief Counsel, Brooklyn, NY (Mark F. DeWan of counsel), for Grievance Committee for the Second, Eleventh, and Thirteenth Judicial Districts.
Arthur J. Morburger, named herein as Arthur Joseph Morburger, Miami, Florida, respondent pro se.

PER CURIAM.

OPINION & ORDER
By order of the Supreme Court of Florida dated June 16, 2021, the respondent was suspended from the practice of law based on a petition for emergency suspension filed by the Florida Bar. By order of the Supreme Court of Florida dated August 25, 2022, the respondent was disbarred from the practice of law, and a judgment in the sum of $11,081.01 was entered for the recovery of costs. The respondent failed to notify this Court of his suspension and disbarment in Florida, in violation of 22 NYCRR 1240.13(d).
Florida Disciplinary Proceeding
The respondent was admitted to the Florida Bar on May 1, 1973. In August 2019, Carl Palomino was awarded the sum of $37,030 in attorney's fees in a matter in which the respondent was opposing counsel, Hernandez v Phillip Morris, U.S.A., Inc., Miami-Dade County Circuit Court Case No. 2008-001484-CA-01 (hereinafter the Hernandez matter). The respondent was ordered to hold the attorney's fees in his trust account pending his client's appeal. The respondent deposited the attorney's fees into his trust account on February 13, 2020. Apart from these funds, the respondent had the sum of $0.54 on deposit in the trust account. On or about February 4, 2021, the court ordered the respondent to disburse the attorney's fees award to Palomino, and on or about February 9, 2021, the respondent issued trust account check number 454 to Palomino for the attorney's fees, which was delivered to Palomino via courier. However, on February 10, 2021, this check was returned for insufficient funds. Approximately one month after the check was returned for insufficient funds, the respondent reported the returned check to the Florida Bar and alleged that his trust account checks had been stolen and forged.
The respondent's trust account bank records indicated that the funds for the attorney's [*2]fees were deposited on February 13, 2020, and that those funds remained in the account through January 31, 2021. No other deposits were made into the respondent's trust account during this period. After the Circuit Court ordered the respondent to disburse the attorney's fees in the sum of $37,030 on or about February 4, 2021, the following checks were presented for payment against the trust account: (1) check number 464 dated February 7, 2021, in the sum of $6,500 payable to GM Investment & Property Solutions (hereinafter GM Investment) (which the bank credited back the sum of $5,000 after the respondent reported the alleged fraud); (2) check number 454 dated February 5, 2021, in the sum of $37,030 payable to Palomino (which was returned for insufficient funds); (3) check number 456 dated February 12, 2021, in the sum of $5,500 payable to GM Investment; (4) check number 455 dated February 11, 2021, in the sum of $2,000 payable to Eyal Amitan (which was not paid by the bank); (5) check number 457 dated March 9, 2021, in the sum of $6,000 payable to GM Investment; (6) check number 458 dated March 21, 2021, in the sum of $6,500 payable to GM Investment; (7) check number 461 dated March 31, 2021, in the sum of $35,530 payable to Palomino (which was returned for insufficient funds); (8) check number 460 dated March 31, 2021, in the sum of $5,000 payable to GM Investment; and (9) check number 459 in the sum of $7,500 payable to GM Investment (which was not paid by the bank). On March 31, 2021, the balance in the respondent's trust account was $23,030.54, not the $35,030 that was required to be on deposit.
Thereafter, on March 31, 2021, the respondent was deposed by Palomino regarding the Hernandez matter, during which the respondent testified that he was aware he was ordered to disburse the attorney's fees award to Palomino and stated that he was unfamiliar with GM Investment. On or about April 7, 2021, the respondent and Palomino met in person at the respondent's bank, where the respondent made a wire transfer to Palomino in the sum of $18,030, which was the remaining balance in the respondent's trust account. The balance of $19,000 owed to Palomino would be paid to him upon the bank refunding the respondent the purportedly stolen funds. While at the bank, the respondent informed Palomino that the respondent knew who had received the funds, that it was a client of whom the respondent was very fond, and that the respondent would have no problem getting the money back from the client. Palomino confirmed with the respondent that Gisselle Manzzo was the principle of GM Investment. The Florida Bar's investigation further revealed that Manzzo was the owner and registered agent of GM Investment and that she was a client and close friend of the respondent.
In the emergency suspension petition, the Florida Bar alleged that based on the aforementioned conduct, the respondent violated the Rules Regulating the Florida Bar rules 4-1.15 (safekeeping property), 4-8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation), and 5-1.1(trust accounts).
After a hearing held on three separate dates, October 27, 28, and 29, 2021, a Florida referee recommended the respondent be found guilty of misconduct justifying disciplinary measures and that the respondent be disbarred. The referee found that the respondent was dishonest in his testimony and dishonest from the onset of the matter. The record showed that after the Circuit Court's February 4, 2021 order to release the attorney's fees, the respondent waited five days before taking action, and upon drafting the check to Palomino on February 9, 2021, the respondent predated the check to February 5, 2021. This check was drafted the day after Manzzo received funds in the sum of $6,500 from the respondent's trust account check number 464. The referee further found that the respondent made misrepresentations concerning check number 454, the first check issued to Palomino that was returned for insufficient funds.
Additionally, the respondent failed in his duty to safeguard the fiduciary funds. After the bank had credited the sum of $5,000 to the respondent's trust account pending its investigation, the respondent could have immediately disbursed those funds to Palomino, but instead the respondent waited several months and took no actions, allowing thousands of dollars to be withdrawn from his trust account. "In the instant case, not only did Respondent fail to close the compromised account and move the funds to a new account, he testified to the undersigned Referee that he also did not bother to look in his checkbook to see if any additional checks were missing to avoid any additional fraud against the trust funds. Respondent testified that he did not conduct such a search through the checkbook until October 28, 2021, in the middle of the final hearing in this matter." As to the respondent's knowledge of GM Investment, the referee found that:
"The record also clearly shows that Respondent did, in fact, know of GM Investment[ ] from before the very first check was written and deposited into Manzzo's account. Manzzo herself testified regarding [*3]her relationship with Respondent. She previously helped out in Respondent's office and Respondent had operated his law practice out of her house. They were very close such that Respondent celebrated the holidays with Manzzo and her family. During her deposition Manzzo state[d] that Respondent was in discussions with her and her boyfriend to become in-house counsel for GM Investment[ ] at the time these checks were written. She claimed the checks were written to her business account because they were meant to fund the setting up of office space that she and Respondent were going to share."
Additionally, 10 days after the alleged stolen check was negotiated, Manzzo provided a check to the respondent to use to pay a reinstatement fee to the Florida Bar to cure a delinquency. The referee reiterated that in addition to the respondent's numerous misrepresentations, the misappropriated funds were ultimately deposited into Manzzo's account, and the respondent failed to file a police report for the purported fraud until two weeks prior to the final hearing. The respondent failed to safeguard the funds due Palomino, and the respondent was held in contempt by the Circuit Court for failing to abide by the order to disburse Palomino's funds, and ordered to pay $19,000.
As to the remaining funds due Palomino, the referee found that the "Respondent himself made no attempt to pay any of Mr. Palomino's missing funds through, at least, the beginning of October 2021. Indeed, it was not until the weeks before the Final Hearing in this [case], after he was held in contempt in the trial court for failure to comply with the court's order and ordered to pay a purge in the amount of the $19,000.00 that was then still missing, that Respondent borrowed the funds and made Mr. Palomino whole."
Ultimately, the referee found that "[i]t is clear that Respondent's actions in this case were not those of an innocent victim. Rather, he purposely delayed taking any protective action, allowing more funds to be misappropriated from the account and delivered to Manzzo. Accordingly, it is not necessary for the undersigned Referee to determine whether Respondent himself wrote the checks, as determined by the bank, or whether some other person in his orbit obtained the checks and made them out fraudulently. It was Respondent's duty and responsibility to protect the funds in the account, and he failed to do so."
The referee considered the following aggravating factors: the respondent's dishonest or selfish motive in having knowledge of who received the funds and allowing the fraud to continue; the respondent's pattern of misrepresentation and deception throughout the proceedings; each instance of writing a bad check and failing to prevent depletion of the account; the submission of false statements; the vulnerability of Palomino in being unable to recover the funds from the respondent; the respondent's substantial experience in the practice of law; and the respondent's indifference to making restitution and failure to report the matter to the police. In mitigation, the referee noted that the respondent lacked a prior disciplinary record.
The report of the referee recommended that the respondent be disbarred, and by order of the Supreme Court of Florida dated August 25, 2022, the report of the referee was approved, the respondent was disbarred from the practice of law, and a judgment in the amount of $11,081.01 was entered for the recovery of costs.
New York Proceeding
By order to show cause dated November 2, 2023, this Court directed the respondent to show cause why an order should not be made and entered pursuant to 22 NYCRR 1240.13 imposing discipline upon him for the misconduct underlying the discipline imposed by the order of the Supreme Court of Florida dated August 25, 2022. By affidavit dated December 15, 2023, the respondent did not raise any of the enumerated defenses in 22 NYCRR 1240.13(b), and argued that no penalty more severe than a suspension for an unspecified period of time is warranted. The respondent contends that the Florida referee's finding that the respondent made misrepresentations to the Florida Bar is "entirely incorrect." The respondent states that the trust account check that was negotiated was forged by an individual named Carlo Hamrahi, whom the respondent knew to be Manzzo's boyfriend. The respondent further states that he was not familiar with GM Investment Corporation, and he was not aware that Manzzo was affiliated with the corporation. The respondent contends that he learned from Palomino that Manzzo was the owner of GM Investment Property, and that Manzzo, Hamrahi, and another client were all social acquaintances. Additionally, the [*4]respondent states that he has no recollection of Manzzo's payment of the respondent's Florida Bar dues, but that presumably Manzzo issued the check as part payment for the respondent's legal services to her.
Findings and Conclusion
Based on the misconduct underlying the discipline imposed by the order of the Supreme Court of Florida dated August 25, 2022, and the respondent's response to this Court's order to show cause, we find that the imposition of reciprocal discipline is warranted. To the extent that the respondent now seeks to challenge the findings in the Florida proceeding, he is not permitted to do so in a reciprocal disciplinary proceeding (see Matter of Carmel, 154 AD3d 72; Matter of Miniter, 129 AD3d 169; Matter of Kersey, 27 AD3d 118). Regarding the sanction, this Court has found that:
"[i]n reciprocal proceedings, we generally accord significant weight to the sanction imposed by the jurisdiction where the misconduct occurred because the foreign jurisdiction has the greatest interest in fashioning sanctions for misconduct perpetrated therein. Therefore, when the sanction prescribed by the foreign jurisdiction is not inconsistent with the sanction for similar misconduct in this jurisdiction, the Court should impose the same sanction" (Matter of Sirkin, 77 AD3d 320, 323 [citations omitted]; see Matter of Esposito, 126 AD3d 93, 109).
Accordingly, we find that the imposition of disbarment is warranted, effective immediately.
LASALLE, P.J., DILLON, DUFFY, BARROS and BRATHWAITE NELSON, JJ., concur.
ORDERED that pursuant to 22 NYCRR 1240.13(c), effective immediately, the respondent, Arthur Joseph Morburger, admitted as Arthur J. Morburger, is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,
ORDERED that the respondent, Arthur Joseph Morburger, admitted as Arthur J. Morburger, shall promptly comply with the rules governing the conduct of disbarred or suspended attorneys (see id. § 1240.15); and it is further,
ORDERED that pursuant to Judiciary Law § 90, effective immediately, the respondent, Arthur Joseph Morburger, admitted as Arthur J. Morburger, shall desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,
ORDERED that if the respondent, Arthur Joseph Morburger, admitted as Arthur J. Morburger, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 1240.15(f).
ENTER:
Darrell M. Joseph
Clerk of the Court